```
1  J. Edward Kerley (175695)
   Dylan L. Schaffer (153612)
2  Kerley Schaffer LLP
   1939 Harrison Street, #500
3  Oakland, California 94612
   Telephone: (510) 379-5801
4  Facsimile: (510) 228-0350

5  Attorneys for Plaintiffs
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BARBARA GUFFY,** as an individual, and as Co-Trustee for The Guffy Family Trust, Dated November 4, 1998, and **BETTY GUFFY**, as an individual, and as Co-Trustee for The Guffy Family Trust, Dated November 4, 1998,<br><br>Plaintiffs,<br><br>v.<br><br>**ALLSTATE INSURANCE COMPANY**, a corporation, and **DOES 1-10**,<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs Barbara Guffy and Betty Guffy ("Plaintiffs") allege as follows, on information and belief except as otherwise stated:

## PARTIES

1. Defendant Allstate Insurance Company ("Allstate" or "Defendant") is an Illinois corporation authorized and licensed to do business in the State of California as an insurance company.

2. Plaintiff Barbara Guffy is a resident of the State of California.

3. Plaintiff Betty Guffy is a resident of the State of California.

4. DOES 1 – 10 were agents of Defendant and were acting within the course and

1

1  scope of their authority, or were acting independently, and each DOE defendant is, in some manner, responsible for the damages alleged.

## JURISDICTION AND VENUE

5. Plaintiffs bring this Complaint under federal diversity jurisdiction per 28 U.S.C. §1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

6. Venue in this district is proper pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions on which the claim is based occurred in the Central District of California.

## INTRA-DISTRICT ASSIGNMENT

7. This lawsuit should be assigned to the Eastern Division of this Court because the agreement underlying this suit was entered into in San Bernardino County, California, and the real property at the center of this controversy is located in San Bernardino County, California.

## FACTS COMMON TO ALL CAUSES OF ACTION

8. Chester M. Guffy and Marilyn C. Guffy owned the real property located at 13989 Tonto Road, Apple Valley, California (the "Property"), as husband and wife and joint tenants from 1975 until November 1998, when they deeded all interest in the Property to The Guffy Family Trust, Dated November 4, 1998 (the "Trust"). In 1998, Chester and Marilyn were the trustees and beneficiaries of the Trust.

9. Chester and Marilyn had two children: Plaintiffs Barbara Guffy and Betty Guffy.

10. Chester Guffy died in 2012; Marilyn Guffy died in June 2015. Upon Marilyn's death, and per the terms of the Trust, Plaintiffs Barbara and Betty Guffy became Co-Trustees of the Trust.

11. The Trust was the successor in interest to Chester and Marilyn Guffy. Accordingly, after Chester's and Marilyn's deaths, title in the Property and some personal property within it remained with the Trust.

12. Allstate originally issued a written policy of insurance—covering both the Property and personal property within it, and providing various other coverage—to Chester and

Marilyn Guffy as named insureds. Allstate renewed that policy for decades—always in Chester's and Marilyn's names, even after their deaths.

13. Allstate renewed and reissued the insurance contract policy in 2016, 2017, 2018, and 2019—each time for a period of one year extending July to July, and each time with decedents Chester and Marilyn Guffy as named insureds—and collected thousands of dollars in premiums in exchange for these policies. The Trust paid these premiums. Allstate was aware the Trust was paying the premiums for each of the policy periods 2016-2019.

14. In the period after Chester's and Marilyn's deaths—that is, from at least June 2015 until May 2020—Allstate never sought to cancel or non-renew these homeowners' policies, and never returned premiums paid by the Trust for these policies.

15. Allstate continued renewing the policy in this manner, even after Plaintiffs notified Allstate in 2014 that due to Chester's death and Marilyn's health infirmity, the vehicles Allstate was insuring under a bundled auto policy were not being driven, and requested that Allstate suspend that auto coverage.

16. Allstate continued renewing the policy even after it became aware that the last named insured, Marilyn Guffy, had died.

17. Consistent with its behavior throughout the relevant period, Allstate issued a written policy of insurance, Policy No. 914871789, effective 7/16/2018 to 7/16/2019, to Chester and Marilyn Guffy, providing coverage for damage to the Property, for damage to personal property within the Property, and for loss of use, among other coverages (the "Policy").

18. The Policy expressly treats as insureds both the named insureds, as well as any of the named insureds' relatives who are residents of the Property household.

19. On or around 5/7/2019, while the Policy was in effect, the Property and its contents were damaged by a fire making the Property unusable and uninhabitable (the "Loss").

20. At the time of the fire, Betty Guffy, an insured under the Policy, was a resident of the Property, as she had been since 2010, when she moved into the Property to care for her ailing and aged parents.

21. Plaintiffs promptly notified Allstate of the Loss and otherwise satisfied all conditions precedent to coverage under the Policy for repair of the home, repair and replacement of its contents, and loss of use for its inhabitant, Betty Guffy.

22. Allstate assigned the claim number 0544570369 QBM (the "Claim").

23. By letter dated 5/28/2019, Allstate denied the Claim.

24. The denial letter cited and relied upon a Policy provision which applies to death of the policyholder during the extant policy period. Allstate then stated: "Due to the last policyholder passing away in June of 2015 we are not able to provide coverage."

25. Allstate did not and could not allege that any policyholder or other insured died in the period of the only relevant contract, that is, 7/16/2018 to 7/16/2019.

26. In the denial letter, Allstate further declined to accept responsibility on behalf of its captive agent, Elizabeth Gonzalez, for failure to obtain coverage.

27. Allstate issued the written denial on 5/28/2019, although it had sent its Policy renewal offer—again issuing the Policy to named insureds Chester and Marilyn Guffy—just five days earlier, on 5/23/2019, with full awareness that both policyholders had died years earlier.

28. Allstate non-renewed the policy for the first time on 4/18/2020, nearly a year after it had (a) denied the Claim and (b) reissued the insurance contract for yet another year, and (c) accepted premiums for a Policy under which it had no intention of offering coverage.

29. In its April 2020 non-renewal, Allstate informed its long-deceased policyholders that "Due to the death of the primary policyholder, this policy provides coverage only until the end of the current policy period." The assertion is an admission by Allstate that policies covering each of the periods proceeding the period July 2020 to July 2021 were in effect and provided coverage for the Property, its contents, and loss of use.

# FIRST CAUSE OF ACTION

## INSURANCE BAD FAITH

**(by Plaintiff Betty Guffy, as an individual,**

**against Allstate and DOES 1-10)**

30. Plaintiffs incorporate the preceding paragraphs by reference as though fully set forth in this First Cause of Action, by Plaintiff Betty Guffy as an individual, against Allstate and DOES 1-10.

31. Allstate issued the Policy to Chester and Marilyn Guffy.

32. The Policy provides $502,754 limits in Coverage A for dwelling repairs (in addition to substantial additional coverage for replacement costs); $50,275 limits in Coverage B for other structures; $377,275 limits for personal property; and $100,551 in limits under coverage for additional living expense for up to 24 months, among other coverages.

33. The Policy expressly qualifies as insureds any relatives of the named insureds who are Property residents.

34. Plaintiffs provided prompt notice of the Loss to Allstate, and Allstate assigned the Loss the Claim number.

35. As a result of the Loss, Plaintiff Betty Guffy has suffered and expects to continue to suffer losses including but not limited to costs of investigation, repair of the Property, repair and replacement of its contents, and for the additional living expenses she has incurred.

36. Allstate and DOES 1-10 breached the covenant of good faith and fair dealing by, among other things:

(a) Failing to explain the coverages available under the Policy in violation of Insurance Code section 790.03(h)(13) and 10 CCR §2695.4(a);

(b) Unreasonably and without justification failing to pay the amounts owed under the Policy for repair of the dwelling, replacement of contents, and for temporary housing and loss of use, in violation of Insurance Code §§790.03(h)(5) and 2051, as well as 10 CCR §§2695.7(g) and 2695.9(a);

(c) Failing to diligently conduct a thorough, fair, and objective investigation of the damage to the dwelling and contents using qualified and licensed professionals in violation of 10 CCR §2695.7(d);

(d) Fraudulently misrepresenting coverages in violation of Insurance Code §2060 and 10 CCR §§2695.4(a) and 2695.4(b); and

(e) Requiring Plaintiffs to obtain counsel and file a lawsuit to obtain amounts owed under the Policy in violation of Insurance Code §790.03(h)(6).

37. As a direct and proximate result of Allstate's and DOES 1-10's breach of the covenant of good faith and fair dealing, by their failure to thoroughly or competently investigate the loss, and by failure to pay benefits under the Policy, Plaintiff Betty Guffy lost the contract benefits due under the Policy, sustained consequential damages, and incurred attorneys' fees and costs in seeking enforcement of their contractual rights.

38. In doing the things set forth above, Allstate and its managing agents and DOES 1-10 acted intentionally with fraud, malice, and oppression in that they knowingly and intentionally violated Plaintiff Betty Guffy's rights under the Policy and knowingly misrepresented material facts for the purpose of depriving her of the payment of Policy benefits. Plaintiffs are therefore entitled to exemplary damages in an amount in accordance with the evidence introduced at trial:

- Allstate knew in May 2019 that it has repeatedly issued contracts of insurance to deceased policyholders, had accepted premiums for that policy for years, but fraudulently concealed from Betty Guffy that the death of her parents had no bearing on the entitlement of intended insureds to collect insurance benefits.
- Allstate conducted no investigation of the history of residence at the Property or relations between its captive agents, such as Ms. Gonzalez, and Plaintiffs' family.
- Allstate failed to consider Betty Guffy's insurable interest in contents and loss of use.
- Allstate knowingly deprived Betty Guffy, who is a senior citizen, of loss of use benefits even during its investigation of the claim, and forced her to live in a hotel

for many months, including during the COVID-19 shelter-in-place period beginning March 2020.

- Allstate failed to account for the fact that its refusal to provide loss of use to a senior citizen who had been forced from her home would have severe consequences for its insured, Betty Guffy.

39. Barbara Marchiony, and her supervisors and managers at Allstate, made, authorized, and/or ratified all of the investigation, claims handling, claims adjustment, and settlement decisions vis a vis Plaintiffs' Claim. Consequently, they are the managing agents of the insurer, Allstate, pursuant to California Civil Code §3294 because they exercised substantial independent authority and judgment in their corporate decision-making such that their decisions ultimately determined corporate policy for Plaintiffs' Claim.

40. Plaintiff Betty Guffy is, and was at all relevant times, a senior citizen as defined by California Civil Code §1761(g) and is thus entitled to a trebling of punitive damages pursuant to California Civil Code §3345.

## SECOND CAUSE OF ACTION
## BREACH OF CONTRACT
### (by Plaintiff Betty Guffy, as an individual, against Allstate and DOES 1-10)

41. Plaintiffs incorporate the preceding paragraphs by reference as though fully set forth in this Second Cause of Action, by Plaintiff Betty Guffy as an individual against Allstate and DOES 1-10.

42. The Loss was covered under the Policy, and at the time of the Loss, Betty Guffy qualified as an insured under the plain, express terms of the Policy as a resident relative.

43. Plaintiff Betty Guffy fulfilled all conditions of the Policy following the Loss, including timely notification to Allstate following the Loss.

44. Allstate and DOES 1-10 breached the policy by failing and refusing to pay the actual cost of repairing the dwelling and contents, and for additional living expenses for Betty

Guffy.

45. As a direct and proximate result of Allstate's and DOES 1-10's breach of the contract, Plaintiff Betty Guffy lost the contract benefits due under the Policy, sustained consequential damages, and incurred attorneys' fees and costs in seeking enforcement of her contractual rights.

46. As a direct and proximate result of Allstate's and DOES 1-10's breach of the Policy, Plaintiff Betty Guffy also suffered foreseeable consequential damages including but not limited to the cost of housing.

## THIRD CAUSE OF ACTION

## INSURANCE BAD FAITH

**(by Plaintiffs, as Co-Trustees and on behalf of the Trust, against Allstate and DOES 1-10)**

47. Plaintiffs incorporate the preceding paragraphs by reference as though fully set forth in this Third Cause of Action, by Plaintiffs Barbara and Betty Guffy as Co-Trustees and on behalf the Trust, against Allstate and DOES 1-10.

48. On or about 7/16/2018, Allstate and Plaintiffs negotiated for and mutually agreed to put in place a policy of insurance covering the Property, its contents, and providing for loss of use. The Policy was intended by both parties to apply to any entity or individual with an insurable interest in the Property, its contents, and loss of use. Allstate, DOES 1-10, and Plaintiffs understood that the terms of the written Policy accomplished this purpose.

49. Allstate collected premiums for the Policy, knowing payments for the Policy were sent by the Trust.

50. Allstate renewed the Policy repeatedly after the listed named insureds were deceased, and renewed it for 2019-2020, days after denying Plaintiffs' Claim following the Loss.

51. Allstate thus insured the Property and its contents and supplied, among other coverages, those described above including for loss of use, and did so as to the Trust's insurable interest.

52. In May 2019, the Property and contents within it suffered a Loss covered under the Policy.

53. Plaintiffs fulfilled all conditions of the Policy following the Loss, including timely notification to Allstate following the Loss.

54. As a result of the Loss, Plaintiffs—as Co-Trustees and on behalf of the Trust—have suffered and expect to continue to suffer losses including but not limited to costs of investigation, to repair the dwelling and other structures, to repair and replace personal property owned by the Trust, and loss of use.

55. Allstate and DOES 1-10 breached the covenant of good faith and fair dealing by, among other things:

   (a) Failing to explain the coverages available under the Policy in violation of Insurance Code §790.03(h)(13) and 10 CCR §2695.4(a);

   (b) Unreasonably and without justification, failing to pay the amounts owed under the Policy for repair of the dwelling, replacement of contents, and for temporary housing and loss of use, in violation of Insurance Code §§790.03(h)(5) and 2051, as well as 10 CCR §§2695.7(g) and 2695.9(a);

   (c) Failing to diligently conduct a thorough, fair, and objective investigation of the damage to the dwelling and contents using qualified and licensed professionals in violation of 10 CCR §2695.7(d);

   (d) Fraudulently misrepresenting coverages in violation of Insurance Code §2060 and 10 CCR §§2695.4(a) and 2695.4(b); and

   (e) Requiring Plaintiffs to obtain counsel and file a lawsuit to obtain amounts owed under the Policy in violation of Insurance Code §790.03(h)(6).

56. As a direct and proximate result of Allstate's and DOES 1-10's breach of the covenant of good faith and fair dealing, by their failure to thoroughly or competently investigate the loss, and by failure to pay benefits under the Policy, Plaintiffs—as Co-Trustees and on behalf of the Trust—lost the contract benefits due under the Policy, sustained consequential damages, and incurred attorneys' fees and costs in seeking enforcement of their contractual rights.

57. In doing the things set forth above, Allstate and its managing agents acted intentionally with fraud, malice, and oppression as previously set forth.

58. Barbara Marchiony, and her supervisors and managers at Allstate, made, authorized, and/or ratified all of the investigation, claims handling, claims adjustment, and settlement decisions vis a vis Plaintiffs' Claim. As such, they are the managing agents of the insurer, Allstate, pursuant to California Civil Code §3294 because they exercised substantial independent authority and judgment in their corporate decision-making such that their decisions ultimately determined corporate policy for Plaintiffs' Claim.

**FOURTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(by Plaintiffs, as Co-Trustees and on behalf of the Trust, against Allstate and DOES 1-10)**

59. Plaintiffs incorporate the preceding paragraphs by reference as though fully set forth in this Fourth Cause of Action, by Plaintiffs Barbara and Betty Guffy in their capacities as Co-Trustees and on behalf of the Trust, against Allstate and DOES 1-10.

60. In May 2019, the Property and contents within it suffered a Loss covered under the Policy.

61. Plaintiffs fulfilled all conditions of the Policy following the Loss, including timely notification to Allstate following the Loss.

62. Allstate and DOES 1-10 breached the policy by failing and refusing to pay the cost to repair the dwelling, repair and replace damaged contents, and for loss of use.

63. As a direct and proximate result of Allstate's and DOES 1-10's breach of the contract, Plaintiffs lost the contract benefits due under the Policy, sustained consequential damages, and incurred attorneys' fees and costs in seeking enforcement of their contractual rights.

64. As a direct and proximate result of Allstate's and DOES 1-10's breach of the Policy, Plaintiffs sustained an uncompensated loss arising out of the refusal to pay for repair of

the dwelling and other structures, personal property, and loss of use.

65. As a direct and proximate result of Allstate's and DOES 1-10's breach of the Policy, Plaintiffs—as Co-Trustees and on behalf of the Trust—also suffered foreseeable consequential damages including but not limited to the cost of housing.

### FIFTH CAUSE OF ACTION

### REFORMATION

**(by Plaintiffs, as individuals, and as and Co-Trustees and on behalf of the Trust, against Allstate and DOES 1-10)**

66. Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth in this Fifth Cause of Action against Allstate and DOES 1-10.

67. On or about 7/16/2018, Allstate and Plaintiffs negotiated for and mutually agreed to put in place a policy of insurance covering the Property, its contents, and providing for loss of use. The Policy was intended by both parties to apply to any entity or individual with an insurable interest in the Property, its contents, and loss of use. Allstate, DOES 1-10, and Plaintiffs understood that the terms of the written Policy accomplished this purpose.

68. Allstate collected premiums for the Policy, knowing payments for the Policy were sent by the Trust.

69. Allstate renewed the Policy repeatedly after the listed named insureds were deceased, and renewed it for 2019-2020, days after denying Plaintiffs' Claim following the Loss.

70. Allstate thus insured the Property and its contents and supplied, among other coverages, those described above including for loss of use, and did so as to the Trust's insurable interest.

71. If the Policy does not provide coverage for these interests, it does not reflect the actual agreement of the parties.

72. Pursuant to Civil Code §3399 and §3401, as a result of mutual mistake, fraud, or inequitable conduct, Plaintiffs request that the Policy be reformed to reflect and apply the

coverages set forth in the Policy for the Property, contents, and loss of use, for the Trust's and Plaintiffs' insurable interests.

## SIXTH CAUSE OF ACTION

### (NEGLIGENT FAILURE TO OBTAIN INSURANCE COVERAGE)

**(by Plaintiffs, as individuals, and as and Co-Trustees and on behalf of the Trust, against Allstate and DOES 1-10)**

73. Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth in this Sixth Cause of Action against Allstate and DOES 1-10.

74. In the period 2016 to 2020, Plaintiffs requested Allstate and DOES 1-10 obtain coverage for the Property, the contents within it, and loss of use for both, and for the Trust's and Plaintiffs'——both as individuals and Co-Trustees of the Trust—insurable interests in those things, and Allstate and DOES 1-10 promised to obtain that insurance for Plaintiffs.

75. If the Policy did not cover the insurable interests of Plaintiffs, both individually and as trustees of the Trust, Allstate and DOES 1-10 were negligent in failing to obtain the promised insurance.

76. As a direct and proximate cause of Allstate's and DOES 1-10's negligence, Plaintiffs lost the contract benefits due under the Policy, sustained consequential damages, and incurred attorneys' fees and costs in seeking enforcement of their contractual rights.

77. Allstate's and DOES 1-10's negligence was a substantial factor in causing Plaintiffs' harm.

## PRAYER FOR RELIEF

Plaintiffs, both individually and as trustees of the Trust, pray for judgment against Allstate and DOES 1-10 as follows:

1. For unpaid policy benefits;
2. For consequential damages, including but not limited to attorneys' fees, emotional distress, expert fees, investigative costs and other costs required to recover policy benefits;
3. For pre-judgment interest;

COMPLAINT AND DEMAND FOR JURY TRIAL

4. For exemplary damages for fraud, oppression, and malice;

5. For trebling of punitive damages pursuant to California Civil Code §3345;

6. Reformation of the Policy as set forth above;

7. For costs of suit;

8. For such other relief as the Court finds just and proper.

Date: May 18, 2020                    Kerley Schaffer LLP


                                      /s/ Dylan L. Schaffer
                                      Dylan L. Schaffer
                                      Attorneys for Plaintiffs

COMPLAINT AND DEMAND FOR JURY TRIAL

**DEMAND FOR JURY TRIAL**

Plaintiffs requests a jury trial.

Date: May 18, 2020

Kerley Schaffer LLP

/s/ Dylan L. Schaffer
Dylan L. Schaffer
Attorneys for Plaintiff